**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. THOMAS WOLF<br><br>Plaintiff,<br><br>v.<br><br>OMEGA WIRELESS, LLC, M/C PARTNERS, SHAMROCK CAPITAL ADVISORS, LLC, PEPPERTREE CAPITAL ADVISORS, LLC, 18TH STREET GROUP, LLC, GLENMEDE TRUST COMPANY, AND JOHN DOES #1-50, FICTITIOUS NAMES,<br><br>Defendants. | No.: 1:21-cv-02346-JMC |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT THE GLENMEDE TRUST COMPANY'S**
**MOTION TO DISMISS**

**STRADLEY RONON STEVENS & YOUNG, LLP**

Michael J. Engle
D.C. Bar No. 1619444
*Attorney for The Glenmede Trust Company, N.A.*
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8737

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** ... 1

**APPLICABLE LEGAL STANDARDS** ... 3

- **I. FEDERAL RULE OF CIVIL PROCEDURE 9(B)** ... 3
- **II. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** ... 5
- **III. THE FALSE CLAIMS ACT, 31 U.S.C. § 3729 ET SEQ.** ... 5

**ARGUMENT** ... 6

- **I. COUNT I SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY** ... 6
  - **A. The Complaint Does Not Identify a Qualifying Claim Under § 3729(a)(1)(A).** ... 6
  - **B. Count I Fails to Allege that Glenmede Submitted False Claims.** ... 7
  - **C. Count I Fails to Plead Scienter.** ... 9
  - **D. Count I Fails to Plead Materiality.** ... 10
- **II. COUNT II SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY** ... 12
  - **A. The Complaint Does Not Identify a Qualifying Claim Under § 3729(a)(1)(B).** ... 12
  - **B. Count II Fails to Allege that Glenmede Made False Statements.** ... 12
  - **C. Count II Fails to Plead Scienter.** ... 13
  - **D. Count II Fails to Allege Materiality.** ... 14
- **III. COUNT III SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY** ... 16
  - **A. The Complaint Does Not Allege Glenmede's Assent to or Participation in a Fraudulent Agreement.** ... 16
  - **B. Count III Fails to Allege that Glenmede Agreed to Participate in an FCA Conspiracy.** ... 17
  - **C. Count III Fails to Allege Materiality.** ... 18
- **IV. COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY** ... 18
  - **A. Count IV Fails to Allege the Existence of an "Obligation" Under the FCA** ... 19

**B. The Complaint Does Not Identify a False Record or Statement Material to a Qualifying Obligation.** ....................20

**C. The Complaint Does Not Plead Knowing and Improper Avoidance or Decrease of a Qualifying Obligation** ....................21

**D. Count IV Allegations Fail to Plead Scienter** ....................22

**CONCLUSION** ....................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....5

*United States ex rel. Bailey v. Veterans Medical Transcription Services, Inc.*,
No. 20-2312 (BAH), 2023 WL 7536185 (D.D.C. Nov. 13, 2023), *aff'd*, No. 23-7171, 2024 WL 4864480 (D.C. Cir. Nov. 22, 2024) .....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....5

*United States ex rel. Bender v. North American Telecommunications, Inc.*,
686 F. Supp. 2d 46 (D.D.C. 2010) .....7

*United States ex rel. Davis v. D.C.*,
793 F.3d 120 (D.C. Cir. 2015) .....7

*Fed. Trade Comm'n v. Cantkier*,
767 F. Supp. 2d 147 (D.D.C. 2011) .....4

*United States ex rel. Finney v. NextWave Telecom, Inc.*,
337 B.R. 479 (S.D.N.Y. 2006) .....7, 12

*United States ex rel. Folliard v. CDW Tech. Svcs. Inc.*,
722 F. Supp. 2d 20 (D.D.C. 2010) .....4

*Haralson v. Mgmt. & Training Corp.*,
724 F. Supp. 2d 82 (D.D.C. 2010) .....4

*United States ex rel. Heath v. AT&T, Inc.*,
791 F.3d 112 (D.C. Cir. 2015) .....13

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) .....5

*United States ex rel. Joseph v Cannon*,
642 F.2d 1373 (D.C. Cir. 1981) .....4

*United States ex rel. Landis v. Tailwind Sports Corp.*,
51 F. Supp. 3d 9 (D.D.C. 2014) .....8, 10, 14, 22

*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*,
251 F.Supp.2d 114 (D.D.C. 2003) .....4

*United States ex rel. Shannon v. BHG Holdings, LLC*,
No. 22-CV-00354 (TSC), 2025 WL 958226 (D.D.C. Mar. 31, 2025), *aff'd*,
No. 25-7059, 2026 WL 1284492 (D.C. Cir. May 11, 2026) ....................10

*United States ex rel. Shea v. Cellco P'ship*,
863 F.3d 923 (D.C. Cir. 2017) ....................19

*United States ex rel. Totten v. Bombardier Corp.*,
286 F.3d 542 (D.C Cir. 2002) ....................3

*United States ex rel. Totten v. Bombardier Corp*.,
380 F.3d 488 (D.C. Cir. 2004) ....................12

*United States ex rel. Tran v. Computer Sciences Corp.*,
53 F. Supp. 3d 104, 2014 WL 2989948 (D.D.C. 2014) ....................5

*United States v. Novo Nordisk Inc.*,
No. CV 21-55 (RJL), 2026 WL 880085 (D.D.C. Mar. 31, 2026) ....................20

*United States v. Sci. Applications Int'l Corp*.,
626 F.3d 1257 (D.C. Cir. 2010) ....................9, 10

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co. Ltd.*,
389 F.3d 1251 (D.C. Cir. 2004) ....................4

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) ....................4

**Statutes**

31 U.S.C. § 3729 ....................5

31 U.S.C. § 3729(a)(1)(A) .................... *passim*

31 U.S.C. § 3729(a)(1)(B) ....................12, 13

31 U.S.C. § 3729(a)(1)(C) ....................16, 17, 18

31 U.S.C. § 3729(a)(1)(G) .................... *passim*

31 U.S.C. § 3729(b)(1) ....................9, 13

31 U.S.C. § 3729(b)(3) ....................19, 20, 21

31 U.S.C. § 3729(b)(4) ....................10, 14

**Other Authorities**

Federal Rule of Civil Procedure 9(b)........................................................................................ *passim*

Federal Rule of Civil Procedure 12(b)(6)................................................................................ *passim*

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant The Glenmede Trust Company, N.A. ("Glenmede"), improperly identified in the Complaint as "Glenmede Trust Company", respectfully moves to dismiss Relator Thomas Wolf's ("Relator") Complaint, which sets forth four causes of action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, for failure to allege fraud with particularity and for failure to state a claim. As detailed below, even with the well-pleaded facts accepted as true, Relator's counts alleging false claims under § 3729(a)(1), do not identify a single specific false claim or statement, nor any practice that establishes liability under the FCA.

To the extent applicable to Glenmede, and except where expressly addressed herein, Glenmede joins in the motions to dismiss and supporting memoranda filed by its co-defendants. Glenmede submits this Motion to address additional grounds for dismissal unique to the allegations asserted against it. Nothing herein should be construed as waiving any argument advanced by its co-defendants, all of which Glenmede expressly adopts and incorporates to the extent relevant.

## PRELIMINARY STATEMENT

The Glenmede Trust Company, N.A. ("Glenmede") is a boutique wealth management firm specializing in financial planning and investment strategies. It was founded in 1956 and is headquartered in Philadelphia, Pennsylvania. Glenmede invests through a number of entities, including, as relevant here, Glenmede Private Investment Fund VIII, LLC, Glenmede Private Investment Fund VIII-B, LLC, and PCT Partners, LLC.

Plaintiff-Relator Thomas Wolf is purportedly a resident of Denver, Colorado who holds securities-industry credentials. His Complaint alleges that defendant Omega Wireless, LLC ("Omega") served as a "front organization" for the purpose of bidding on and securing spectrum licenses at Federal Communications Commission ("FCC") auctions. According to the Complaint, Omega used its status as a "designated entity" – a small business eligible for a discount in these

auctions – to enable named defendants to secure licenses at a price for which they would otherwise be ineligible.

The Complaint includes 157 paragraphs of background and asserted allegations comprising the Relator's argument before setting forth the Counts alleging FCA violations. Out of those 157 paragraphs, Glenmede is referenced individually in only *three* paragraphs, all within the section describing the defendants. Rel.'s Compl. ¶¶ 27-29. Throughout another 25 paragraphs, Relator only refers to Glenmede insofar as it is described as one of the "Large Business Defendants." There are no other allegations or conduct specifically attributed to Glenmede throughout the Complaint.

Omega Wireless LLC is a limited liability company that was established in 2016 under the laws of the State of Delaware. Omega was created for the express purpose of bidding on authorizations (or licenses) for broadband wireless spectrum in the 470 to 698 MHz band offered through an FCC incentive auction. According to the Complaint, its investors, and their respective interest expressed as a percentage, allegedly include defendants M/C Partners (16.34%), Shamrock Capital Advisors, LLC (21.79%), Peppertree Capital Advisors, LLC (22.895%), 18th Street Group, LLC (8.72%), and Glenmede (5.562%). Relator relies on this alleged equity interest, including the 5.562% attributed to Glenmede, to lump Glenmede and the other named and unnamed defendants into the category of "Large Business Defendants" that supposedly exercised *de facto* control over Omega, thus forming the alleged basis of its FCA liability. As explained below, these allegations as pled are insufficient.

Relator devotes more than 59 paragraphs of his Complaint to historical background, none of which even mentions Glenmede. As alleged, two Omega principals consulted Relator in 2014 about advice for potentially raising private capital to participate in the upcoming AWS-3 FCC spectrum auction (Auction 97). When Omega and Relator did not establish a suitable private fund

in time for Omega to participate in Auction 97 as a principal, Omega instead provided strategy and bidding-system support to a third party as a subcontractor.

According to the Complaint, Omega later considered participating in FCC Auction 1002. Relator alleges that, during 2015 and 2016, Omega and Relator sought financing from several named defendants for that potential participation and presented a proposed trading strategy and anticipated returns. The Complaint further alleges that those fundraising efforts were largely unsuccessful because prospective capital providers raised concerns about Omega's experience in the sector and its valuation analyses of available licenses.

Relator further alleges that Omega subsequently accepted greater investor involvement in exchange for needed capital. Under Relator's characterization, certain investors did more than provide passive financing by offering strategic and structural guidance while deploying capital. Relator contends that this level of involvement amounted to *de facto* control, rendering Omega ineligible for designated-entity status and the associated discount. On that basis, Relator characterizes Omega as a "front" for otherwise ineligible investors and asserts FCA liability. As explained below, however, the Complaint does not adequately support that theory, especially as to Glenmede.

## APPLICABLE LEGAL STANDARDS

### I. FEDERAL RULE OF CIVIL PROCEDURE 9(B)

Cases alleging fraud are subject to the requirements of Federal Rules of Procedure (FRCP) 9(b). According to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). Because the FCA is a fraud statute, the Complaint's allegations must be pleaded with particularity under Rule 9(b) of the FRCP. *See United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C Cir. 2002)

(noting that "[e]very circuit to consider the issue has held that, because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)").

Accordingly, Rule 9(b) requires an FCA relator to "state the time, place, and content of the false representations, the fact misrepresented . . . and identify individuals allegedly involved in the fraud." *Haralson v. Mgmt. & Training Corp.,* 724 F. Supp. 2d 82, 84 (D.D.C. 2010) (citations omitted). In other words, a relator must plead, with specificity, the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008); *see also, Fed. Trade Comm'n v. Cantkier,* 767 F. Supp. 2d 147, 151 (D.D.C. 2011). To meet this standard, "the pleader … state[s] the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co. Ltd.,* 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir 1994)). The failure to meet the FRCP 9(b) pleading standard in allegations arising under the False Claims Act is a sufficient ground upon which a court must dismiss a complaint. *See United States ex rel. Folliard v. CDW Tech. Svcs. Inc.*, 722 F. Supp. 2d 20, 24 (D.D.C. 2010).

Motions to dismiss for failure to plead fraud with sufficient particularity are evaluated in light of the overall purposes of Rule 9(b), which are: to "ensure that defendants have adequate notice of the charges against them to prepare a defense," *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 114, 116 (D.D.C. 2003); to discourage "suits brought solely for their nuisance value," *United States ex rel. Joseph v Cannon,* 642 F.2d 1373, 1385 (D.C. Cir. 1981); and to "protect reputations of . . . professionals from scurrilous and baseless allegations of fraud." *Id.* at 1385 n. 103 (alteration in original) (quoting *Felton v. Walston & Co., Inc.,* 508 F.2d 577, 581 (2d. Cir. 1974)).

## II. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must provide more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's factual allegations "must be enough to raise a right of relief above the speculative level," *id.,* and must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This plausibility standard requires "factual content" that leads reasonably to the inference that the defendant is liable, and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57.) (cleaned up). A plaintiff must therefore account for "more likely" or "obvious alternative explanations" for the conduct alleged. *Id.* at 681-82. In considering a motion to dismiss, the Court takes as true the well-pleaded allegations of the complaint, but "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012). Accordingly, a complaint, must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555.

## III. THE FALSE CLAIMS ACT, 31 U.S.C. § 3729 ET SEQ.

The False Claims Act imposes liability on anyone who knowingly submits, or causes to be submitted, false or fraudulent claims to the United States Government. *See* 31 U.S.C. § 3729. Generally speaking, the FCA "provides a cause of action for private parties, known as 'relators,' to bring suits on behalf of the federal government for false or fraudulent statements made to the government" with the requisite scienter. *United States ex rel. Tran v. Computer Sciences Corp.*, 53 F. Supp. 3d 104, 116, 2014 WL 2989948 at *7 (D.D.C. 2014).

Relator's Complaint alleges violations of four FCA provisions, namely 31 U.S.C. § 3729 (a)(1)(A), (a)(1)(B), (a)(1)(C), and (a)(1)(G). Relevant here, these FCA provisions impose liability on any person who

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A) [or] (B), and . . . (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(A)-(C), (G).

## ARGUMENT

### I. COUNT I SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY

Relator cannot state a claim under 31 U.S.C. § 3729(a)(1)(A) because he has failed to allege, with sufficient particularity, that Glenmede presented or caused to be presented a false claim for payment or approval to the United States Government. Further, Relator cannot sustain a claim under Count I because he has failed to allege the necessary scienter and materiality requirements.

#### A. The Complaint Does Not Identify a Qualifying Claim Under § 3729(a)(1)(A).

Section 3729(a)(1)(A) imposes liability on any person who "knowingly presents, or causes to be presented [to the United States Government], a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Count I fails because the conduct alleged does not involve the submission of a "claim" within the meaning of the FCA. The FCA's false claims provisions are aimed at false demands for government money or property, not efforts to reduce or avoid

amounts allegedly owed to the Government. In *United States ex rel. Finney v. NextWave Telecom, Inc.*, the court recognized this distinction, holding that requests relating to FCC bidding credits and license payments were not demands for payment or reimbursement from the Government, and thus did not qualify as a "claim," as that term is used in the FCA. *United States ex rel. Finney v. NextWave Telecom, Inc.*, 337 B.R. 479 (S.D.N.Y. 2006). Accordingly, such requests did not constitute false claims under § 3729(a)(1).

Likewise here, Relator does not allege that Glenmede sought payment from the Government or caused the Government to disburse funds. Rather, the theory appears to be that Defendants caused the FCC to issue an auction credit for which the Defendants were allegedly ineligible. Under *Finney,* the award of credits is not the submission of a false claim for payment and therefore cannot support liability under § 3729(a)(1)(A). *See id.*

**B. Count I Fails to Allege that Glenmede Submitted False Claims.**

To satisfy a "presentment" claim, a plaintiff must allege facts plausibly showing that the defendant submitted " '[1] a claim to the government, [2] that the claim was false, and [3] that the defendant knew that the claim was false.' " *United States ex rel. Davis v. D.C.*, 793 F.3d 120, 124 (D.C. Cir. 2015) (*quoting United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003)). Rule 9(b) further requires particularized allegations identifying Glenmede's role in the alleged fraud. Collective references to multiple defendants do not substitute for allegations explaining each defendant's conduct. *See United States ex rel. Bender v. North American Telecommunications, Inc.*, 686 F. Supp. 2d 46, 53–54 (D.D.C. 2010) (rejecting collective allegations that failed to identify the individual defendants' respective roles in the alleged fraud); *United States ex rel. Bailey v. Veterans Medical Transcription Services, Inc.*, No. 20-2312 (BAH), 2023 WL 7536185 (D.D.C. Nov. 13, 2023), *aff'd*, No. 23-7171, 2024 WL 4864480 (D.C. Cir. Nov. 22, 2024) (finding that references to "management" and lists of names,

without an explanation of the named individuals' roles in the alleged fraud, fail to provide sufficient information to answer the allegations and expose those individuals to vague, potentially damaging accusations). The Complaint must therefore explain what Glenmede allegedly did to present or cause the presentation of a false claim, rather than merely identify it as an investor associated with other defendants.

The Complaint fails to provide those allegations. Its individualized allegations concerning Glenmede merely describe investments through Glenmede-managed entities totaling approximately 5.562% of Omega's equity, rather than conduct presenting or causing a false claim. *See* Rel.'s Compl. ¶¶ 27–29. Relator then includes Glenmede among the "Large Business Defendants" and alleges their liability collectively, without identifying a particular claim Glenmede presented or caused to be presented, the conduct by which it did so, when that conduct occurred, or any officer, employee, or agent who acted on its behalf. *See id.* ¶ 159. This falls short of the "specificity required under Rule 9(b) that [Glenmede] caused the submission of false claims." *United States ex rel. Landis v. Tailwind Sports Corp.,* 51 F. Supp. 3d 9, 50 (D.D.C. 2014). Nominal inclusion in the group of "Large Business Defendants" does not fill the gap left by absent factual allegations explaining Glenmede's role in the alleged fraud.

Relator's reliance on "de facto control" does not cure these pleading deficiencies. The Complaint's theory rests on the premise that the "Large Business Defendants" exercised de facto control over Omega, rendering it ineligible for designated-entity benefits. Yet, as the Complaint acknowledges, the FCC evaluates de facto control by considering multiple factors. Applying that standard requires facts concerning the actual arrangement, not merely Relator's characterization of it. Merely grouping Glenmede with other investors and labeling their involvement "de facto control" does not establish either Glenmede's control over Omega or the falsity of any claim or

certification attributable to Glenmede. As to Glenmede, the Complaint does not identify particular conduct showing that it directed Omega's bidding or otherwise exercised the control on which Relator's theory depends, nor does it explain how Glenmede's alleged control caused the presentation of a particular false claim.

The allegations, without more, do not establish that Glenmede presented or caused the presentation of a false claim. The Complaint identifies no specific conduct showing that Glenmede directed Omega's bidding, participated in any allegedly false certification, or caused any particular false claim to be submitted to the Government. Glenmede's alleged investment therefore does not supply the missing particularized allegations connecting it to the asserted FCA violation. Accordingly, Count I fails to plead Glenmede's liability under § 3729(a)(1)(A) with the specificity required by Rule 9(b) and should be dismissed under Rules 9(b) and 12(b)(6).

**C. Count I Fails to Plead Scienter.**

The Complaint's reliance on FCC rules and decisions does not bridge the gap between alleged regulatory noncompliance and liability under the FCA. Even assuming, solely for purposes of this Motion, that the FCC could have determined that Omega was ineligible for designated-entity benefits, that determination would not itself establish that Glenmede knowingly presented or caused the presentation of a false claim. Relator must still plead facts supporting a plausible inference that Glenmede acted with actual knowledge, deliberate ignorance, or reckless disregard of the alleged falsity. *See* 31 U.S.C. §§ 3729(a)(1)(A), (b)(1). Allegations concerning Omega's regulatory eligibility do not substitute for allegations identifying Glenmede's own conduct and state of mind. The Complaint's invocation of FCC requirements therefore does not cure its failure to allege facts connecting Glenmede to the knowing submission or causation of a false claim.

Courts find that a "claim for payment is false when it rests on a false representation of compliance with an applicable federal statute, federal regulation, or contractual term." *United*

*States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) ("SAIC"). In analyzing this element, "[t]he FCA's scienter requirement should be strictly enforced." *Landis,* 51 F. Supp at 51 (citing *SAIC*, 626 F.3d at 1271). To allege that Glenmede had knowledge of the falsity, "the relator can demonstrate either that [Glenmede] had actual knowledge or that [it] deliberately avoided or recklessly disregarded the truth." *Id.* (quoting *SAIC*, 626 F.3d at 1274-75). Here, Relator fails to allege that Glenmede had any actual knowledge of the alleged fraud "nor does he allege some other means by which [Glenmede] would have obtained direct knowledge." *Id.* That alone should be dispositive, but combined with the prohibition against unsupported group pleading discussed *supra* it is fatal to the claim in Count I for failure to allege facts under elements 2 and 3, as required.

**D. Count I Fails to Plead Materiality.**

Establishing knowledge under 31 U.S.C. § 3729(a)(1)(A) requires the relator to prove that the defendant knows (1) that it failed to comply with an applicable federal statute, regulation, or contractual term; and (2) that its compliance with the obligation was material to the Government's decision to pay. *See SAIC,* 626 F.3d 1257. Thus, an FCA claim requires falsity, materiality, and scienter. *See, i.e., United States ex rel. Shannon v. BHG Holdings, LLC*, No. 22-CV-00354 (TSC), 2025 WL 958226, at *8 (D.D.C. Mar. 31, 2025), *aff'd*, No. 25-7059, 2026 WL 1284492 (D.C. Cir. May 11, 2026) (internal citations omitted).

Here, Count I fails because the Complaint does not plausibly allege that any purported misrepresentation or regulatory noncompliance was material under the False Claims Act. The FCA defines materiality as having "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In *Universal Health Services, Inc. v. United States ex rel. Escobar*, the Supreme Court emphasized that materiality is a "rigorous" and "demanding" standard and that not every statutory, regulatory, or contractual violation gives

rise to FCA liability. 579 U.S. 176, 192-95 (2016). Rather, courts must consider whether the alleged requirement was a condition of payment, whether the purported violation went to the "essence of the bargain" or was merely "minor or insubstantial," whether the Government consistently refuses payment based on similar violations, and whether the Government would have refused payment or approval had it known of the alleged noncompliance. *Id.* at 194-95. Critically, the Supreme Court explained that "[i]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* at 195.

The Complaint's own allegations foreclose any plausible claim of materiality. Relator alleges that the Federal Communications Commission reviewed Omega's application and determined that it was "complete and in conformance with FCC rules." Rel.'s Compl. ¶ 148. The Complaint further alleges that the FCC specifically examined Omega's governance provisions in 2018, after which Omega revised the relevant agreement. Following that review, the FCC approved the transaction and found Omega compliant with applicable regulatory requirements. Thus, this is not a case where the Government was unaware of the facts Relator now claims rendered Omega ineligible. To the contrary, the FCC reviewed the very governance structure challenged in the Complaint, required revisions it deemed appropriate, and ultimately approved the transaction. Under *Escobar*, the Government's approval of the transaction after reviewing the relevant governance provisions is powerful evidence that the alleged noncompliance was not material. Because the Complaint affirmatively alleges that the FCC was aware of and evaluated the challenged arrangement before granting approval, Relator cannot plausibly claim that the alleged violation had a natural tendency to influence, or was capable of influencing, the

Government's decision. Accordingly, Count I fails to adequately plead materiality and should be dismissed.

## II. COUNT II SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY

### A. The Complaint Does Not Identify a Qualifying Claim Under § 3729(a)(1)(B).

For the same reasons set forth in Section I.A, Count II fails because the Complaint does not identify a qualifying "claim" within the meaning of the FCA. As explained above, the FCA reaches false demands for government money or property, not efforts to reduce or avoid amounts allegedly owed to the Government. *See United States ex rel. Finney v. NextWave Telecom, Inc.*, 337 B.R. 479, 488 (S.D.N.Y. 2006) (holding that requests relating to FCC bidding credits and license payments were not demands for payment from the Government and therefore did not constitute FCA "claims"). Because Relator does not allege that Glenmede sought payment from the Government or caused the Government to disburse funds, but instead alleges that Defendants caused the FCC to issue an auction credit, Count II fails to identify a qualifying "claim" under the FCA.

### B. Count II Fails to Allege that Glenmede Made False Statements.

Section 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). Subsection (a)(1)(B) is "designed to prevent those who make false records or statements [in order] to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval." *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 501 (D.C. Cir. 2004) (emphasis in original). The claim must also satisfy Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead fraud with

particularity by identifying the time, place, and manner of the alleged fraud and providing sufficient details to permit the defendant to respond to the allegations. *See* Fed. R. Civ. P. 9(b); *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123-24 (D.C. Cir. 2015). Conclusory allegations, speculation, and generalized assertions of fraud are insufficient. *Id.* at 125.

Count II fails because the Complaint does not plausibly allege that Glenmede made, used, or caused to be made or used any false record or statement material to a false or fraudulent claim. Relator alleges no facts showing that Glenmede made any false statement, prepared or transmitted any false record, or otherwise participated in any misrepresentation to the Government. Instead, Relator relies solely on Glenmede's alleged investments in Omega and its inclusion within the collectively defined group of "Large Business Defendants," before alleging in conclusory fashion that those defendants are liable under § 3729(a)(1)(B). *See* Rel.'s Compl. ¶¶ 27–29, 162–63.

Moreover, those collective allegations do not satisfy Rule 9(b). The Complaint never identifies a false record or statement attributable to Glenmede, when it was made, who made it, why it was false, or how Glenmede made, used, or caused it to be made or used. Glenmede's alleged investment and inclusion among the "Large Business Defendants" do not supply those missing particulars. Absent factual allegations connecting Glenmede to any false record or statement material to a false or fraudulent claim, Count II fails under § 3729(a)(1)(B) and Rule 9(b).

### C. Count II Fails to Plead Scienter.

The Complaint at Count II fails to adequately plead scienter under the False Claims Act. The FCA imposes liability only where a defendant acts "knowingly," meaning that the defendant has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). As the Supreme Court recently clarified in *United States ex rel. Schutte v. SuperValu*

*Inc.*, FCA liability turns on the defendant's subjective understanding and contemporaneous belief at the time the claim was submitted, rather than on an objectively reasonable post hoc interpretation of the relevant requirements. 598 U.S. 739, 743 (2023). Under *SuperValu*, the critical question is what the defendant actually believed regarding the truth or falsity of its submissions when they were made. *Id.* To allege that Glenmede had knowledge of the falsity, "the relator can demonstrate either that [Glenmede] had actual knowledge or that [Glenmede] deliberately avoided or recklessly disregarded the truth." *Landis,* 51 F. Supp at 51 (quoting *SAIC*, 626 F.3d at 1274-75).

The Complaint offers only the conclusory allegations that "Omega's Short-Form and Long-Form were false because Omega knowingly failed to disclose all of its instruments, agreements, and understandings with the Large Business Defendants." Rel.'s Compl. at ¶ 153. But the Complaint does not allege facts showing that any Defendant actually knew, deliberately ignored, or even should have known  or recklessly disregarded that these disclosures were purportedly incomplete or legally deficient. Nor does it identify any facts demonstrating that any Defendant subjectively believed that additional disclosures were required under the applicable FCC regulations and nevertheless withheld them. Absent well-pleaded facts supporting a plausible inference of contemporaneous knowledge of falsity, the Complaint's bare assertion that Defendants acted "knowingly" is precisely the type of conclusory allegation that fails to satisfy the FCA's scienter requirement and therefore requires dismissal.

**D. Count II Fails to Allege Materiality.**

The Relator cannot establish materiality at Count II under the False Claims Act. In order to prove a claim of a false statement made under the FCA, Relator needs to prove the alleged false statement was "material." The FCA requires proof that the alleged false statement or regulatory noncompliance had "a natural tendency to influence, or be capable of influencing," the Government's decision to pay or approve a claim. 31 U.S.C. § 3729(b)(4). This is a "rigorous" and

"demanding" standard. *Escobar*, 579 U.S. at 194-95. Critically, the Supreme Court explained that "[i]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.* at 195.

Here, the FCC's review of Omega's application is an example of that "strong evidence" signaling lack of materiality. The Complaint alleges that the FCC reviewed Omega's application and determined that it was "complete and in conformance with FCC rules." Rel.'s Compl. ¶ 148. Moreover, the FCC specifically evaluated Omega's governance provisions in 2018, after which Omega revised the relevant agreement. Following that review, the FCC approved the transaction and found Omega compliant with applicable regulatory requirements. Thus, by Relator's own account, this is not a case in which the Government was unaware of the allegedly problematic arrangement. To the contrary, according to Relator's own allegations, the FCC knew of the very governance structure the Relator now challenges, investigated it, required revisions, and nevertheless approved the transaction. Under *Escobar*, the Government's continued approval and acceptance of the arrangement despite what Relator alleges is its actual knowledge of the alleged regulatory issue is powerful evidence that the purported noncompliance was not material to any payment or approval decision. Because the Government was aware of the alleged issue and proceeded to approve Omega's application, the Relator does not plausibly, no less with particularity, allege that the Government would likely have refused payment or approval had it known of the purported violation. Accordingly, the Complaint fails to adequately plead materiality as required by the FCA.

## III. COUNT III SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY

### A. The Complaint Does Not Allege Glenmede's Assent to or Participation in a Fraudulent Agreement.

Count III alleges a conspiracy to violate the presentment and false-statement provisions of the FCA. For the reasons explained above, however, the Complaint does not identify a qualifying claim underlying either assertion. Independently, the Complaint fails to allege facts showing that Glenmede joined any agreement to accomplish an FCA violation or took any act in furtherance of such an agreement.

The FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) fails for the same reason that the Complaint fails to state a substantive FCA claim against Glenmede, namely that the Complaint does not plausibly allege that Glenmede participated in, much less agreed to further, any fraudulent scheme. The Complaint does not identify any false or fraudulent claim presented to the Government by Glenmede, any act by Glenmede that caused such a claim to be presented, or any particular claim that resulted from conduct attributable to Glenmede. Instead, Relator relies on Glenmede's alleged minority investment in Omega and generalized references to the "Large Business Defendants." Those allegations do not establish that Glenmede participated in the submission of a false claim or took any action directed toward obtaining Government payment or approval. Because the Complaint fails to plead an underlying FCA violation attributable to Glenmede—or facts connecting Glenmede to the presentation of any particular false claim—Count III fails under Rules 9(b) and 12(b)(6).

As discussed above and in addressing Counts I and II, FCA complaints are subject to Rule 9(b)'s heightened pleading requirements, which require particularized allegations identifying each defendant's role in the alleged fraud. The collective allegations likewise do not identify

Glenmede's participation in the alleged conspiracy. Here, the Complaint relies on collective allegations that fail to distinguish Glenmede's conduct from that of other defendants. Although Glenmede need not have personally submitted a false claim to incur conspiracy liability, Relator must still plead facts showing that Glenmede knowingly joined an agreement to violate the FCA and participated in advancing that unlawful objective. As discussed below, the cited communications do not identify Glenmede as a participant or otherwise establish its assent to a fraudulent objective. Because the Complaint fails to allege with particularity either an underlying FCA violation attributable to Glenmede or Glenmede's knowing participation in a conspiracy to commit one, Count III should be dismissed pursuant to Federal Rules 9(b) and 12(b)(6).

### B. Count III Fails to Allege that Glenmede Agreed to Participate in an FCA Conspiracy.

To plead an FCA conspiracy, a relator must allege facts showing (1) an agreement among the defendants, (2) a shared objective to defraud the Government through the submission of false claims or false statements, and (3) acts taken in furtherance of that agreement. 31 U.S.C. § 3729(a)(1)(C). It is also essential that the defendants shared a fraudulent objective. It is not enough that the defendants merely agreed to do something that happened to result in a false claim. They must have intended to advance the fraudulent scheme together. Allegations that defendants communicated, maintained business relationships, or worked toward common business objectives are insufficient. Rather, the Complaint must plead a "meeting of the minds" to prove conspiracy and must do so with the particularity required by Rule 9(b).

Here, the Complaint identifies only certain email communications among Triad Communications, Ed Moise, and William Scott Soden concerning M/C Partners. The Complaint alleges no communications involving Glenmede or any Glenmede officer, employee, or agent, and it identifies no facts suggesting that Glenmede agreed with any person or entity to submit false

claims or make false statements to the Government. Nor do the cited communications themselves support such an inference. At most, they reflect ordinary business planning and discussions regarding corporate matters, not an agreement to engage in fraud. Because the Complaint fails to allege facts showing that Glenmede entered into any agreement, shared any fraudulent objective, or committed any act in furtherance of an FCA violation, the conspiracy claim under § 3729(a)(1)(C) must be dismissed.

### C. Count III Fails to Allege Materiality.

To the extent Count III alleges an agreement to violate §§ 3729(a)(1)(A) or (B), the materiality deficiencies identified in Sections I.D and II.D also undermine the alleged object of that agreement. Materiality under the FCA is "demanding" and cannot be established merely because the Government would have had the option to decline payment had it known of the alleged noncompliance. Instead, the relator must plead facts showing that the alleged misrepresentation had a natural tendency to influence, or was capable of influencing, the Government's payment decision. Here, the Complaint offers only conclusory assertions of materiality and does not allege facts demonstrating that any statement attributable to Glenmede actually influenced, or could have influenced, any Government payment determination. Accordingly, the Complaint at Count III fails to satisfy the FCA's materiality requirement.

## IV. COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND FAILS TO PLEAD WITH SUFFICIENT PARTICULARITY

Section 3729(a)(1)(G) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Reverse false claims are also subject to a heightened pleading standard and so must

be alleged "with particularity," including the "time, place, and content of the fraud" and the identification of the individuals allegedly involved. *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 926 (D.C. Cir. 2017) (internal quotation marks and citation omitted). To establish a violation of § 3729(a)(1)(G), a relator must show that the defendant either (1) knowingly makes or uses a false record or statement that is material to an obligation to pay money or property to the Government, or (2) knowingly conceals or improperly avoids or decreases an obligation to pay money or property to the Government. 31 U.S.C. § 3729(a)(1)(G). The Complaint fails under either theory because it does not plausibly allege the existence of an FCA "obligation," does not identify any materially false statement concerning such an obligation, and does not allege facts demonstrating that Glenmede knowingly avoided or concealed any payment owed to the Government.

### A. Count IV Fails to Allege the Existence of an "Obligation" Under the FCA.

Count IV independently fails because the Complaint does not plausibly allege the existence of an "obligation" within the meaning of the False Claims Act. Section 3729(a)(1)(G), commonly referred to as the FCA's "reverse false claims" provision, imposes liability only where a defendant knowingly makes or uses a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or improperly avoids such an obligation. 31 U.S.C. § 3729(a)(1)(G). The FCA defines an "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). Thus, a relator must identify a concrete, existing duty to pay money or property to the Government; a speculative, contingent, or potential future liability is insufficient. Additionally, courts routinely reject "reverse" FCA theories "where

the ‘reverse’ claim would merely duplicate the presentment claim.” *United States v. Novo Nordisk Inc.,* No. CV 21-55 (RJL), 2026 WL 880085, at *6 (D.D.C. Mar. 31, 2026) (internal citations omitted).

Here, Relator does not provide any additional allegations to support the reverse FCA theory, relying only on the presentment allegations described above. *See* Rel.'s Compl. ¶ 169. Relator alleges only that Omega's FCC filings purportedly failed to disclose certain relationships and agreements. Even accepting those allegations as true, the Complaint does not explain how the alleged disclosure deficiencies gave rise to any existing payment obligation owed by Glenmede to the Government. Nor does the Complaint identify any statute, regulation, contract, license condition, fee obligation, or overpayment that imposed such a duty. Absent factual allegations establishing the existence of a qualifying obligation, Count IV cannot state a claim under § 3729(a)(1)(G). Because the Complaint fails to plead a threshold element of § 3729(a)(1)(G), Count IV should be dismissed pursuant to Rule 12(b)(6).

### B. The Complaint Does Not Identify a False Record or Statement Material to a Qualifying Obligation.

To state a reverse-false-claim theory based upon a false statement, a relator must plausibly allege that the defendant made or used a false statement that was material to an existing obligation to pay money or property to the United States. *See* 31 U.S.C. §§ 3729(a)(1)(G), 3729(b)(3).

The Complaint does not identify the particular agreement, instrument, or understanding allegedly omitted from Omega’s disclosures or explain how the Revised LLC Agreement failed to reflect the parties’ actual allocation of control. The Complaint also does not identify any false record or statement made by Glenmede. Without those particulars, the Complaint fails to explain what was false, why it was false, or how any identified falsehood was material to an established obligation to pay the Government.

### C. The Complaint Does Not Plead Knowing and Improper Avoidance or Decrease of a Qualifying Obligation.

The Complaint likewise does not plausibly allege that Glenmede concealed, avoided, or decreased an "obligation" within the meaning of the FCA. The FCA defines an "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Relator's theory appears to rest on the premise that the “Large Business Defendants” exercised sufficient control over the designated entities that their revenues should have been attributed for FCC bidding-credit purposes. However, the Complaint does not plausibly allege either de jure or de facto control. It does not allege that any “Large Business Defendant” owned more than fifty percent of a relevant entity and therefore pleads no basis for de jure control.

Nor does the Complaint adequately plead de facto control. As the Complaint itself recognizes, the FCC evaluates de facto control by considering multiple factors. Whether that standard is satisfied depends on specific factual allegations addressing the relevant regulatory factors, not the conclusory assertion that investors exercised control. As to Glenmede, the Complaint identifies only its alleged investment in Omega and does not plead particularized facts showing that Glenmede directed Omega’s bidding or otherwise exercised the control on which Relator’s theory depends. Merely grouping Glenmede with other investors and labeling their involvement “de facto control” does not establish either Glenmede’s control over Omega or the falsity of any claim or certification attributable to Glenmede.

At most, the Complaint alleges involvement in bidding strategy, which constitutes only a single management decision and falls far short of establishing the type of pervasive control necessary to attribute revenues under FCC rules. The Complaint never alleges that attributing the

revenues of the "Large Business Defendants" would have caused the relevant entities to exceed the applicable $20 million revenue threshold and become ineligible for the bidding credits at issue. Additionally, absent an underlying obligation the Complaint cannot plausibly allege that Glenmede knowingly concealed, avoided, or decreased such an obligation. Without allegations establishing both an existing payment obligation and knowing misconduct directed toward avoiding that obligation, Count IV fails to state a claim under § 3729(a)(1)(G).

### D. Count IV Allegations Fail to Plead Scienter

Under *SuperValu*, the critical question is what the defendant actually believed regarding the truth or falsity of its statements or its obligation to the Government at the time of the alleged conduct. 598 U.S. at 743. That inquiry is particularly important under § 3729(a)(1)(G), which imposes liability only where a defendant knowingly makes a false statement material to an obligation or knowingly conceals or improperly avoids or decreases an obligation owed to the Government. Accordingly, to state a reverse-false-claim theory, Relator must plead facts supporting a plausible inference that Glenmede had actual knowledge of a payment obligation, deliberately avoided learning of such an obligation, or recklessly disregarded its existence. *See Landis*, 51 F. Supp. 3d at 51.

The Complaint offers only the conclusory allegation that "Omega's Short-Form and Long-Form were false because Omega knowingly failed to disclose all of its instruments, agreements, and understandings with the Large Business Defendants." Rel.'s Compl. ¶ 153. Yet the Complaint does not allege facts showing that Glenmede actually knew, deliberately ignored, or recklessly disregarded that it had an obligation to pay or transmit money or property to the Government, that any such obligation existed, or that any disclosure was legally deficient. Nor does it identify facts demonstrating that Glenmede subjectively believed that additional disclosures were required and nonetheless concealed information in order to avoid or decrease an obligation to the Government.

Absent well-pleaded facts supporting a plausible inference of contemporaneous knowledge, the Relator's bare assertion that Defendants acted "knowingly" is insufficient. Such conclusory allegations do not satisfy the FCA's scienter requirement and therefore fail to state a claim under § 3729(a)(1)(G).

**CONCLUSION**

For the foregoing reasons, Defendant Glenmede respectfully requests that the Court grant its motion pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and dismiss Counts I, II, III, and IV of the Complaint as against Glenmede, with prejudice.

Date: October 30, 2026

*/s/ Michael J. Engle*
Michael J. Engle
D.C. Bar No. 1619444
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
T: (215) 564-8737
E: mengle@stradley.com
*Attorney for Defendant,*
*The Glenmede Trust Company, N.A.*