**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. THOMAS WOLF, | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-02346 (JMC) |
| v. | ) | |
| OMEGA WIRELESS LLC, et al., | ) | |
| Defendants. | ) | |

**DEFENDANT 18TH STREET GROUP LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 1

A. The Alleged Scheme. ..... 1

B. The Allegations Against 18th Street Group. ..... 3

ARGUMENT ..... 4

I. Counts I and II Fail Because 18th Street Group Is Not Alleged to Have Caused or Known of Any False Claim or Statement. ..... 5

A. The Complaint Alleges Neither a Claim nor a Falsity. ..... 5

B. No Act by 18th Street Group Could Have "Caused" a False Claim or Statement. ..... 6

C. The Complaint Does Not Allege Facts to Show that 18th Street Group Had the Requisite Knowledge. ..... 8

II. Count III Fails Because the Complaint Does Not Allege an Agreement by 18th Street Group. ..... 8

III. Count IV Fails Because the Complaint Alleges No Statement by 18th Street Group and No Obligation with Particularity. ..... 10

IV. The Complaint's Grouping of Defendants Does Not Save Its Claims Against 18th Street Group. ..... 11

V. The Public-Disclosure Bar Independently Requires Dismissal. ..... 13

VI. Relator Cannot Obtain Disgorgement or Injunctive Relief. ..... 14

VII. Relator's Prosecution of This Action Is Unconstitutional. ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4, 9

*Buckley v. Valeo*, 424 U.S. 1 (1976) .......... 15

*Hurd v. District of Columbia*, 864 F.3d 671 (D.C. Cir. 2017) .......... 2

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) .......... 2

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) .......... 15

**Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73 (D.D.C. 2014) .......... 8, 9, 10

**United States ex rel. Adams v. Dell Comput. Corp.*, 496 F. Supp. 3d 91 (D.D.C. 2020) .......... 6, 7, 9

*United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292 (D.D.C. 1996) .......... 5, 8

**United States ex rel. Bender v. N. Am. Telecomms., Inc.*, 750 F. Supp. 2d 1 (D.D.C. 2010), *aff'd*, 499 F. App'x 44 (D.C. Cir. 2013) .......... 5, 7, 12

*United States ex rel. Finney v. NextWave Telecom, Inc.*, 337 B.R. 479 (S.D.N.Y. 2006) .......... 5

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. 2003) .......... 14

*United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112 (D.C. Cir. 2015) .......... 4

**United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C. Cir. 1981) .......... 4, 6

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721 (D.C. Cir. 2019) .......... 10

*United States ex rel. Kini v. Tata Consultancy Servs.*, 146 F.4th 1184 (D.C. Cir. 2025) .......... 10

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871 (D.C. Cir. 2010) .......... 8, 14

**United States ex rel. O'Connor v. U.S. Cellular Corp.*, 153 F.4th 1272 (D.C. Cir. 2025) .......... 2, 4, 7, 13

*United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, 2026 U.S. Dist. LEXIS 176185 (D.D.C. Aug. 7, 2026) .................................................... 7

*United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466 (D.C. Cir. 2016) .................................................................................................... 13

*United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542 (D.C. Cir. 2002) ....................................................................................................... 4

*United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29 (D.C. Cir. 2022) ...................................................................................... 4

**United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) ..................................................................................... 4, 5, 12

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) ................................................................................................. 14

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 ........................................................................................ 15

U.S. Const. art. II, § 2, cl. 2 ........................................................................................ 15

U.S. Const. art. II, § 3 .................................................................................................. 15

**Statutes**

31 U.S.C. § 3729 ........................................................................... 2, 3, 5, 6, 8, 10, 14

31 U.S.C. § 3730 .................................................................................................. 13, 14

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4

Fed. R. Civ. P. 9(b) ..................................................................................................... 4, 10

## INTRODUCTION

Defendant 18th Street Group LLC moves to dismiss this False Claims Act complaint with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Relator alleges that Omega Wireless LLC falsely claimed a small-business discount on Federal Communications Commission spectrum licenses because the other defendant companies had *de facto control* over it. But missing from the complaint are any allegations that 18th Street Group sought or exercised such control. In fact, 18th Street Group is mentioned only a few times, and there are no allegations about 18th Street Group's involvement in communications, meetings, negotiations, payments, or bid documents related to the FCC auction. Because Rule 9(b) requires Relator to allege his fraud claims "with particularity," and the complaint fails to do so, the Court should dismiss the complaint with prejudice as to 18th Street Group.[1]

## BACKGROUND

### A. The Alleged Scheme.

The FCC's Auction 1002 of spectrum licenses offered a 25% bidding credit to qualifying "very small businesses." Compl. ¶¶ 4, 50–54. Eligibility turned on the revenues of the applicant together with its affiliates and controlling interests, including anyone with *de facto* control. *Id.* ¶¶ 61–64. Omega was allegedly formed in 2016 to bid in that auction and claimed the credit. *Id.* ¶ 10, at 4; *id.* ¶ 141.

Relator is a securities professional hired by Omega in 2015 to raise capital for the FCC auction. The complaint alleges that Omega's principals, Ed Moise and Scott Soden, could not

---

[1] 18th Street Group's motion addresses the grounds for dismissal specific to it. 18th Street Group also joins in and adopts the arguments made in the motion to dismiss filed by Defendants Omega Wireless LLC, M/C Partners, Shamrock Capital Advisors, LLC, and Peppertree Capital Fund VI QP, LP, ECF No. 60 (Omega Mem.), to the extent they apply to it, and briefly addresses the principal ones below.

attract investors on standard private-fund terms, and Omega was thus in danger of not being able to participate in the auction. *Id.* ¶¶ 86–87, 106–12.[2] According to the complaint, the solution was to offer control of the company. The idea of ceding control to large investors was "explored with other investor groups," and "many of the investors still had no interest, but the idea took hold with M/C Partners." Compl. ¶ 114. The complaint alleges a few specific communications, but none include 18th Street Group or any of its principals. *See, e.g.*, *id.* ¶¶ 115, 116, 118, 119–20, 121–22.

The complaint includes allegations about a June 2018 FCC inquiry into Omega's April 6, 2016 Amended and Restated Limited Liability Company Agreement. The FCC asked about the agreement's supermajority-vote provisions and about provisions requiring the consent of the "Majority Institutional Investors," a group that the complaint alleges "included Large Business Defendants M/C Partners, Peppertree, and Shamrock." *Id.* ¶¶ 142–44. Omega revised the agreement, and the FCC found Omega's license application "complete and in conformance with" its rules. *Id.* ¶¶ 146–48.[3] The complaint alleges that "the Large Business Defendants led by M/C Partners dictated every aspect of Omega's bidding." *Id.* ¶ 123.

The four counts then charge "Defendants" collectively with presenting false claims, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I); making false records or statements, in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II); conspiring to violate subsections (A) and (B), in violation

[2] Because the complaint's paragraph numbering restarts at ¶ 8 after ¶ 14, paragraphs 8 through 14 appear twice. Citations to paragraphs in that range include the complaint's internal page number.

[3] The complaint quotes the FCC's description of the "Omega Wireless, LLC Amended and Restated Limited Liability Company Agreement, dated April 6, 2016," and relies on that agreement's provisions as the mechanism of the alleged control. Compl. ¶¶ 142–44, 148. The agreement, as filed with the FCC in redacted form, is attached as Exhibit A (LLC Agreement). The Court may consider it because the complaint refers to it and it is integral to the claims. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *United States ex rel. O'Connor v. U.S. Cellular Corp.*, 153 F.4th 1272, 1277 (D.C. Cir. 2025). 18th Street Group relies on this public FCC filing only for what it says, not for the truth of its contents. *See Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017).

of 31 U.S.C. § 3729(a)(1)(C) (Count III); and avoiding an obligation to pay the government, in violation of 31 U.S.C. § 3729(a)(1)(G) (Count IV). Compl. ¶¶ 158–70. None of the specific counts mentions 18th Street Group.

**B. The Allegations Against 18th Street Group.**

The complaint makes only five allegations about 18th Street Group, one under the "Introduction" heading and four under the "Parties" heading. Here is the entirety of the allegations against it:

> **Paragraph 3**: "Defendants targeted exclusive licensing access to wireless services spectrum that were auctioned by the FCC in Auction 1002, which was conducted in August 2016. Specifically, Defendants M/C Partners, Shamrock Capital Advisors, LLC, Peppertree Capital Advisors, LLC, 18th Street Group, and Glenmede Trust Company (collectively, the 'Large Business Defendants'), identified particular blocks of spectrum that supplemented spectrum licenses the Large Business Defendants already owned."
>
> **Paragraph 12, at 5**: "Other investors in Omega included M/C VII Funds (16.34% interest), Peppertree IV Funds (21.79% interest), Shamrock Capital Advisors, LLC (21.79%), and 18th Street Group, LLC (8.72% interest)."
>
> **Paragraph 24**: "18th Street Group LLC ('18th St. Group') is a limited liability company fund that was founded in 2003 and is headquartered in Beckley, West Virginia."
>
> **Paragraph 25**: "The managing members of 18th St. Group are Marz Attar and Tom Attar."
>
> **Paragraph 26**: "18th St. Group holds an 8.72% beneficial equity interest in Omega."

Aside from the founding date and headquarters, the source of these facts is Omega's own FCC ownership filing, the same filing the complaint cites for Peppertree's interest. *See* Compl. at 6 n.1. The complaint does not allege that anything in that description was false.[4]

---

[4] The complaint does not allege that 18th Street Group held any spectrum license before Auction 1002, in a market complementary to Omega's or otherwise, even though the "Large Business Defendants" are defined as entities that "already owned" complementary spectrum. Compl. ¶ 3.

**ARGUMENT**

Rule 12(b)(6) permits dismissal of a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

Because the False Claims Act is "self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)." *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002). FCA complaints must therefore satisfy both Rule 8's plausibility standard and Rule 9(b)'s particularity standard to avoid dismissal. *See O'Connor*, 153 F.4th at 1277; *United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38 (D.C. Cir. 2022). To satisfy Rule 9(b), "the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (quotation omitted). The complaint must also "identify with specificity who precisely was involved in the fraudulent activity." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004). This rule exists to "guarantee all defendants sufficient information to allow for preparation of a response" and to "safeguard[] potential defendants from frivolous accusations of moral turpitude." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015) (quoting *Williams*, 389 F.3d at 1256). Although knowledge may be alleged generally, Fed. R. Civ. P. 9(b), a complaint must still "state facts from which the Court can infer a

knowing violation on the part of the defendants." *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292, 303 (D.D.C. 1996).

A complaint "must make specific allegations against each individual defendant rather than collective allegations." *United States ex rel. Bender v. N. Am. Telecomms., Inc.*, 750 F. Supp. 2d 1, 6 (D.D.C. 2010) (quotation omitted), *aff'd*, 499 F. App'x 44 (D.C. Cir. 2013). "It is insufficient to allege a scheme against one defendant and merely ascribe similar behavior to another." *Id.* at 6. A complaint that names defendants without "explaining the role these individuals played in the alleged fraud" fails to give them "sufficient information to answer" and "subject[s] the named individuals to vague, potentially damaging accusations of fraud." *Williams*, 389 F.3d at 1257.

## I. Counts I and II Fail Because 18th Street Group Is Not Alleged to Have Caused or Known of Any False Claim or Statement.

### A. The Complaint Alleges Neither a Claim nor a Falsity.

Counts I and II arise under § 3729(a)(1)(A) and (B). Subsection (A) pertains to a false "claim for payment or approval," and subsection (B) pertains to a false record or statement "material to a false or fraudulent claim." A "claim" is a "request or demand . . . for money or property" made to the government, 31 U.S.C. § 3729(b)(2)(A). Both subsections thus require a claim and a falsity.

The complaint here identifies no such claim. What it describes instead is a request for a bidding credit, which is a request to pay the government less, not a demand that the government pay. Compl. ¶¶ 52, 136. "Without a demand for payment or reimbursement from the government, there simply is no 'claim' under the FCA." *United States ex rel. Finney v. NextWave Telecom, Inc.*, 337 B.R. 479, 488 (S.D.N.Y. 2006) (dismissing presentment and conspiracy counts where the relator alleged that defendants used false statements "to decrease or avoid an obligation to

make payments to the government for its electromagnetic spectrum licenses"). Instead, conduct of that kind is addressed, if at all, under § 3729(a)(1)(G). *See* Omega Mem. § III.B.ii.

Nor does the complaint allege falsity. It alleges that Omega's applications "included numerous fraudulent statements and omissions" and that the agreements Omega disclosed "were false," Compl. ¶¶ 152–54, but it never says which statement was false or why. *See* Omega Mem. § III.B.ii. That is a failure of particularity as well as plausibility: Rule 9(b) requires the content of the false statement, and the complaint identifies none. *See Cannon*, 642 F.2d at 1385.

Finally, the complaint does not plead materiality either. It alleges that the FCC examined the provisions of the LLC Agreement Relator now challenges, accepted Omega's revisions, and granted the licenses, Compl. ¶¶ 142–48, and it does not explain why any undisclosed fact would have changed that result. 18th Street Group adopts Omega's argument on this point. Omega Mem. § III.B.ii. For these reasons, Counts I and II should be dismissed as to every defendant.

**B. No Act by 18th Street Group Could Have "Caused" a False Claim or Statement.**

Even if the complaint had identified a claim and a false statement, Counts I and II would still fail as to 18th Street Group. Both subsections impose liability on the person who submitted the claim or made the statement, or on the person who caused it to be submitted or made. *See United States ex rel. Adams v. Dell Comput. Corp.*, 496 F. Supp. 3d 91, 96–97 (D.D.C. 2020). Here, the complaint alleges that Omega, not 18th Street Group, filed the Form 175 and Form 601 applications and made the certifications at issue. Compl. ¶¶ 67–72, 80–83, 141, 151–54. Thus, 18th Street Group can only be liable under Counts I and II if it "cause[d]" Omega to present a false claim or make a false statement. 31 U.S.C. § 3729(a)(1)(A), (B).

Whether a non-submitting party "caused" a submission turns on "the degree to which that party was involved in the scheme that results in the actual submission," and that involvement must

be knowing. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, 2026 U.S. Dist. LEXIS 176185, at *35 (D.D.C. Aug. 7, 2026) (quoting *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 127 (D.D.C. 2014)). The complaint alleges no act by 18th Street Group that could have "caused" anything. It does not, for example, allege that 18th Street Group communicated with Omega about the auction, took part in any bidding decision, reviewed or contributed to any FCC filing, or knew what the filings said.

Courts in this District have routinely dismissed FCA claims on this ground. In *Bender*, for example, the court dismissed the FCA claims against a subcontractor where the relator "ha[d] not made any allegation that [the defendant] submitted or caused to be submitted any claim containing false or fraudulent information." 750 F. Supp. 2d at 7. And in *Adams*, the court dismissed a § 3729(a)(1)(B) claim because the relator "failed to allege a single 'statement' made by any of the [moving] Defendants." 496 F. Supp. 3d at 97. The same is true here.

The only act the complaint attributes to 18th Street Group is its 8.72% investment in Omega. An investment in a bidder like Omega is not, without more, the "cause" of a bidding submission. The FCC designed its designated-entity program to "encourage large companies to invest in" small businesses, and the D.C. Circuit has recognized that an investor's status as a limited partner, "far from suggesting the exercise of day-to-day control, indicated precisely the opposite." *O'Connor*, 153 F.4th at 1279 (quoting *In re Implementation of Section 309(j) of the Communications Act—Competitive Bidding*, 9 FCC Rcd. 5532 ¶¶ 10, 15 (1994)). What disqualifies an applicant is an investor that "controlled" it or "secured an agreement to take over its licenses." *Id.* at 1279–80. Relator alleges neither as to 18th Street Group. Instead, the complaint describes its interest as an 8.72% beneficial stake, Compl. ¶ 26, and the LLC Agreement gives a member in that position a vote on the managers but no role in managing the company. LLC Agreement § 6.3(a)–

(c). In other words, according to Relator, 18th Street Group did what the FCC's rules encourage: it invested. That is not an act that "caused" Omega's certifications. The Court should dismiss Counts I and II as to 18th Street Group.

### C. The Complaint Does Not Allege Facts to Show that 18th Street Group Had the Requisite Knowledge.

Counts I and II also require that 18th Street Group acted "knowingly." 31 U.S.C. § 3729(b)(1). Rule 9(b) permits knowledge to be alleged generally, but the complaint must still plead facts that make the allegation of knowledge plausible. *Dyncorp*, 924 F. Supp. at 303. Here, every fact in the complaint about knowledge concerns a defendant other than 18th Street Group. *See, e.g.*, Compl. ¶¶ 119, 120, 121. Because the complaint does not allege any facts to make plausible the general allegation that 18th Street Group acted "knowingly," the Court should dismiss Counts I and II.

## II. Count III Fails Because the Complaint Does Not Allege an Agreement by 18th Street Group.

An FCA conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) requires "(1) that 'an agreement existed to have false or fraudulent claims allowed or paid' to the government, (2) that each alleged member of the conspiracy 'joined that agreement,' and (3) that 'one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy.'" *Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) (quoting *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010)). The second element—joining the agreement—is specific to each defendant. A complaint that shows one actor "was the driving force behind the alleged illegality" and is "devoid of any facts from which th[e] Court could infer that [the other defendants] each separately agreed to join any conspiracy" does not state a claim against the others. *Si*, 71 F. Supp. 3d at 98.

In the complaint at issue here, Relator alleges only that "Defendants and John Does Nos. 1-50 . . . knowingly conspired, and are still conspiring, to commit acts in violation of 31 U.S.C. § 3729(a)(1)(A) & (a)(1)(B)," and that "Defendants committed overt acts in furtherance of the conspiracy as described above." Compl. ¶ 166. Those two sentences constitute "a formulaic recitation of the elements." *Iqbal*, 556 U.S. at 678; *Adams*, 496 F. Supp. 3d at 96. The lone earlier allegation of agreement is equally bare: "Defendants conspired amongst themselves" and "agreed to enter into this scheme." Compl. ¶ 12, at 3. And as for overt acts, the complaint names none, and nothing "described above" identifies an act by any particular defendant or 18th Street Group. *See* Omega Mem. § III.B.iii.

Even reading the factual allegations in the light most favorable to Relator, they do not allege that 18th Street Group joined in any agreement. For example, the complaint does not allege that 18th Street Group communicated with M/C Partners, Omega, or anyone else about control, bidding, or the FCC filings. In fact, the complaint alleges that the control arrangement was one in which "many of the investors still had no interest." Compl. ¶ 114. The only conduct alleged is that 18th Street Group invested in Omega, Compl. ¶ 26, and the LLC Agreement shows that it did so in the same class of units, on the same terms, as M/C, Peppertree, and Shamrock. LLC Agreement § 5.3(a)(iii). Investing on the same terms as those investors is parallel conduct, and "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

Finally, Count III fails as a matter of law for an independent and "simple reason: there can be no conspiracy to commit fraud in violation of the FCA if an underlying false claim has not been adequately alleged." *Si*, 71 F. Supp. 3d at 98 (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). A conspiracy count requires "an underlying FCA violation," and rejection of the underlying theories of liability "mandates" dismissal of the conspiracy count. *United States ex rel.*

*Kasowitz Benson Torres LLP v. BASF Corp.*, 929 F.3d 721, 728–29 (D.C. Cir. 2019). Because the complaint pleads no claim and no false statement, *see supra* § I.A, it has not adequately alleged an underlying FCA violation and therefore pleads no conspiracy. The Court should accordingly dismiss Count III.

**III. Count IV Fails Because the Complaint Alleges No Statement by 18th Street Group and No Obligation with Particularity.**

To state a reverse false claim under 31 U.S.C. § 3729(a)(1)(G), the complaint must allege facts to show that a defendant knowingly makes or uses a false record or statement "material to an obligation to pay or transmit money or property to the Government," or knowingly conceals or improperly avoids such an obligation. The provision applies to "fraudulent conduct that deprives the government of money that it is owed," and "[t]o state a reverse false claim, the relator must allege this obligation and its effect(s) 'with particularity.'" *United States ex rel. Kini v. Tata Consultancy Servs.*, 146 F.4th 1184, 1188 (D.C. Cir. 2025) (quoting Fed. R. Civ. P. 9(b)). Particularity means pleading "the time, place, and content of the fraud" and identifying "the individuals allegedly involved." *Id.* at 1192 (quotation omitted). A relator must also "allege the specific sources of [the] preexisting obligation" and "specify the parameters of that obligation, such as what triggers the duty to repay and what sort of repayment it requires." *Si*, 71 F. Supp. 3d at 96 (quotation omitted).

Here, Count IV alleges only that "Defendants knowingly avoided or decreased their obligation to pay or transmit money to the government," followed by a recitation of the statutory elements. Compl. ¶ 169. Read generously, that paragraph invokes both prongs of subsection (G): knowingly making or using a false record material to an obligation and knowingly avoiding or decreasing one. *See* Omega Mem. § III.B.iv. Neither prong is adequately pleaded as to 18th Street Group. The only obligation the complaint alleges is *Omega's* duty to pay for its licenses, decreased

by the bidding credit *Omega* claimed, Compl. ¶¶ 84, 136, and those allegations do not connect 18th Street Group to the claimed credit in any way. For example, the complaint alleges no statement by 18th Street Group about it and no act by which 18th Street Group caused a statement.

As for the second prong of subsection (G)—avoiding or decreasing an obligation—the lone obligation the complaint describes is one Omega satisfied. Omega's net bid, after the bidding credit, was $99,024,356, and the complaint does not allege that Omega paid less than that. Compl. ¶ 136. For Omega to have owed more, the credit must have been unavailable, which on Relator's own account requires that the Large Business Defendants controlled Omega and that their revenues, attributed to Omega, exceeded $20 million. *Id.* ¶¶ 52, 61–64. The complaint pleads neither. It does not allege that any defendant held more than 50% of Omega's voting interests, which it describes as the measure of *de jure* control. *Id.* ¶ 12, at 5; *id.* ¶ 62. Of the seven *de facto* control factors it lists, it addresses at most two. *Id.* ¶¶ 64, 123–24. And it never says what the Large Business Defendants' revenues were. Without those facts, Omega owed what it paid, and there was nothing to avoid or decrease. *See* Omega Mem. § III.B.iv.1. For these reasons, the Court should dismiss Count IV.[5]

## IV. The Complaint's Grouping of Defendants Does Not Save Its Claims Against 18th Street Group.

Relator may respond that the complaint alleges that 18th Street Group is part of the "Large Business Defendants" and that there are numerous allegations about this group of defendants. But grouping defendants does not satisfy Rule 9(b)'s particularity requirement because a complaint "must make specific allegations against each individual defendant rather than collective

[5] Nor does the conspiracy count supply a route to liability under this subsection of the statute: Count III pleads a conspiracy to violate subsections (A) and (B) only, not subsection (G). Compl. ¶ 166.

allegations." *Bender*, 750 F. Supp. 2d at 6. Here, the "collective allegations" against the Large Business Defendants are insufficient to defeat a motion to dismiss.

18th Street Group stands accused of serious fraud but has no idea what role it supposedly played or how to defend against the claims given that the complaint is devoid of allegations about its conduct. This is precisely the type of complaint that this jurisdiction has not hesitated to dismiss with prejudice, recognizing the harm such vague allegations work against a party. *Williams*, 389 F.3d at 1257, 1259 (affirming dismissal with prejudice of FCA count that named individuals without explaining their role in the alleged fraud).

Although there are a few allegations against other defendants, Compl. ¶¶ 88, 113, 115, 118, those allegations cannot be imputed to 18th Street Group as a matter of course. Having placed 18th Street Group inside the defined term "Large Business Defendants," Compl. ¶ 3, the complaint then attributes to the group as a whole the acts of M/C Partners. *See, e.g.*, *id.* ¶ 123 ("the Large Business Defendants led by M/C Partners dictated every aspect of Omega's bidding"); *id.* ¶¶ 128–29, 137–40, 150. Courts in this District have repeatedly rejected that tactic. *Bender*, 750 F. Supp. 2d at 6 ("It is insufficient to allege a scheme against one defendant and merely ascribe similar behavior to another.").

Finally, the LLC Agreement that Relator relies on as the method of control further confirms that the rights at issue belong to other investors, not 18th Street Group. The agreement names three "Institutional Investors": M/C, Peppertree, and Shamrock. *See* LLC Agreement § 1.1. It gives the consent rights the FCC questioned to the "Majority Institutional Investors." *Id.* § 6.4(a); *see* Compl. ¶ 144. 18th Street Group is not one of these; it appears in the agreement only as a holder of Series A Preferred Units, on the same terms as M/C, Peppertree, and Shamrock. *See* LLC Agreement § 5.3(a)(iii). And because 18th Street Group is neither a Manager nor a Controlling

Member, according to the LLC Agreement, it "shall not direct the conduct of or have any control over the Company, its management, business and affairs." *Id.* § 6.3(b). Thus, taking every allegation as true, the only role the complaint—and the document it relies on—gives 18th Street Group is that of a passive investor. Because the complaint does not allege what 18th Street Group did, Rule 9(b) requires dismissal of every count against it.

**V. The Public-Disclosure Bar Independently Requires Dismissal.**

The FCA bars a *qui tam* action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in, among other things, "a congressional . . . or other Federal report, hearing, audit, or investigation," unless the relator is an original source. 31 U.S.C. § 3730(e)(4)(A)–(B). FCC spectrum-licensing proceedings, including the short-form and long-form applications filed in them, are an "other Federal . . . hearing" under the statute. *O'Connor*, 153 F.4th at 1278. The bar "prevents suits by those other than an 'original source' when the government already has enough information 'to investigate the case and to make a decision whether to prosecute,'" and "[m]erely providing 'more specific details' about what happened does not negate substantial similarity." *United States ex rel. Oliver v. Philip Morris USA Inc.*, 826 F.3d 466, 472 (D.C. Cir. 2016) (quotation omitted).

As detailed in Omega's motion, each element of Relator's theory was publicly disclosed before he filed: Omega's short-form and long-form applications and the LLC Agreement were filed in the FCC's licensing proceeding; the FCC's 2018 inquiry into Omega's control provisions was public; and the FCC Chairman's written response to a question from the congressional hearing identified Omega by name. *See* Omega Mem. § III.C. Relator's complaint recites those disclosures and adds nothing that materially alters them.

As to 18th Street Group, the bar applies with particular force. Every fact the complaint alleges about 18th Street Group's role in Omega appears in Omega's publicly filed Form 175

ownership disclosure, the same filing the complaint cites for Peppertree's interest. *See* Compl. at 6 n.1; *id.* ¶¶ 24–26. The FCC's 2018 inquiry into Omega's control structure and the Chairman's written response to a congressional question that followed were public too, and the complaint quotes both. *Id.* ¶¶ 142–46. Relator adds nothing about 18th Street Group to that record, and his only allegation that he is an original source is a single conclusory sentence that says nothing about 18th Street Group. *See id.* ¶ 9, at 4; Omega Mem. § III.C. Thus, the complaint must be dismissed for this reason as well.

**VI. Relator Cannot Obtain Disgorgement or Injunctive Relief.**

The complaint asks that "Defendants" be ordered to cease and desist, to disgorge, and to be enjoined. Compl., Prayer for Relief ¶¶ A, C, E. A relator sues on a "partial assignment of the Government's damages claim," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000), and the statute limits that claim to specific relief: civil penalties, treble damages, and the relator's expenses and fees. 31 U.S.C. §§ 3729(a)(1), 3730(d). It does not authorize injunctive relief at a relator's request. And "the measure of damages" under the FCA is what the government "would" have paid absent the fraud, not what the defendant received. *See Miller*, 608 F.3d at 904. Disgorgement of everything the government paid is therefore not an available remedy. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 922–23 (4th Cir. 2003) (measuring FCA damages by what the government paid "above what it would have paid absent the false statement," and refusing disgorgement of "all $9 million that the government paid") (cited with approval in *Miller*, 608 F.3d at 906). Those requests for relief should be dismissed as to 18th Street Group. *See also* Omega Mem. § III.E.

**VII. Relator's Prosecution of This Action Is Unconstitutional.**

For the reasons set out in Omega's motion, the qui tam provisions of the FCA violate Article II as applied to a relator who continues to prosecute claims in the government's name after

the United States has declined to intervene. Omega Mem. § III.F. The Constitution vests the executive power in the President, U.S. Const. art. II, § 1, cl. 1, charges him to "take Care that the Laws be faithfully executed," *id.* § 3, and permits that power to be exercised only by officers appointed in the manner the Appointments Clause prescribes, *id.* § 2, cl. 2. Conducting "civil litigation in the courts of the United States for vindicating public rights" is an exercise of that power, and "[s]uch functions may be discharged only by persons who are 'Officers of the United States.'" *Buckley v. Valeo*, 424 U.S. 1, 140 (1976). A relator who prosecutes an FCA action after the government declines to intervene does exactly that, yet he was never appointed as an officer and is "accountable to no one." *See Seila Law LLC v. CFPB*, 591 U.S. 197, 219, 224 (2020). Relator's prosecution of this action is therefore unconstitutional, and the complaint should be dismissed on that ground as well. 18th Street Group adopts Omega's argument on this issue in full.

## **CONCLUSION**

For the foregoing reasons, 18th Street Group respectfully requests that the Court dismiss Counts I through IV against it with prejudice.

Dated: October 30, 2026

Respectfully submitted,

/s/ Sara E. Kropf

Sara E. Kropf (D.C. Bar No. 481501)
Molly Bunke (D.C. Bar No. 1617507)
KROPF MOSELEY SCHMITT PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900
sara@kmlawfirm.com

*Counsel for Defendant 18th Street Group LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2026, I caused the foregoing to be filed through the Court's CM/ECF system, which will send notice to all counsel of record, and to be served on the United States.

/s/ Sara E. Kropf
__________________
Sara E. Kropf